Pesante Martínez, Juez Ponente
*1257 TEXTO COMPLETO DE LA SENTENCIA
El 11 de mayo de 1995 el Tribunal de Primera Instancia, Sala Superior de Humacao, emitió sentencia en la cual declaró sin lugar la demanda sobre injunction para retener la posesión de un predio de terreno de 3,217.66 metros cuadrados presentada por el Centro Cultural de Las Piedras (Centro Cultural) contra el Municipio de Las Piedras (Municipio). Contra dicho dictamen la parte demandante interpuso oportunamente el presente recurso de apelación. Por los fundamentos que a continuación exponemos confirmamos la sentencia apelada.
El 3 de septiembre de 1981 la Asamblea Municipal de Las Piedras aprobó la Ordenanza Municipal Número 3. La misma disponía la segregación y venta por un dólar ($1.00) de un solar de 960.40 metros cuadrados y de la estructura que se encontraba en ese terreno al Centro Cultural de Las Piedras. Las partes estaban supuestas a elevar a escritura pública la transacción pero esto no se hizo hasta el 8 de febrero de 1994. El 26 de mayo de 1989 nuevamente la Asamblea Municipal- aprobó otra Ordenanza (Núm. 17) relacionada con el mismo terreno. Esta ordenanza revocaba la Ordenanza Núm. 3. En ella se dispuso la readquisición por parte del gobierno municipal de los terrenos que una vez fueron destinados al Centro Cultural. En dicho terreno se proponían ubicar el Departamento de Obras Públicas Municipal. El municipio se comprometió a ceder en el futuro otras facilidades para la localización del Centro Cultural.
El 30 de mayo de 1989 el Centro Cultural presentó una querella contra el municipio en el Tribunal Municipal de Las Piedras. Alegaron ser dueños del solar; que desde 1981, cuando se otorgó la Ordenanza Núm. 3, habían actuado como dueños del mismo y que el municipio les estaba perturbando en el uso de su propiedad al estacionar indebidamente autos del gobierno en dicho predio. Por su parte el querellado (el municipio) adujo que el solar en controversia es parte de una finca municipal de cuatro (4) cuerdas; que para ese entonces aún en el Registro de la Propiedad aparecía el solar sin segregar y a nombre del municipio (refiriéndose a los 960.40 m.c.) y que en virtud de la Ordenanza 17 de 1989 se había derogado la Ordenanza Núm. 3 de 1981 por lo que el dominio del solar se había *1258 revertido al municipio. Ante tal polémica el Tribunal Municipal de Las Piedras decretó el siguiente estado provisional de derecho:

"Las partes deberán dilucidar la controversia titular en el foro correspondiente. Los querellantes, mientras se demuestra su título, deberán abstenerse de construir, mejorar, planificar, contratar o de otra forma gravar el solar en el cual hoy ubicaría el Centro Cultural de Las Piedras. Los querellados por su parte, deberán abstenerse de gravar, de cualquier forma dicho solar y deberán desalojar cualquier auto o propiedad del municipio que hoy ubique en dicho solar. Deberán mantenerlo limpio."

Poco tiempo después, el 1 de septiembre de 1989, el municipio presentó demanda sobre "Sentencia Declaratoria con Remedio de Injunction y Acción Civil" (Civil Núm. CS-89-1063). En dicho recurso solicitaban del tribunal que les prohibiera al Centro Cultural hacer uso, y/o intentar y/o construir facilidades en los terrenos que originalmente le fueron cedidos en virtud de la Ordenanza Núm. 3. Además, argüyeron que los demandados no habían utilizado dichos terrenos desde que le fueron otorgados originalmente y que luego de casi ocho años pretendían iniciar gestiones para la construcción de una edificación cuando carecían de autoridad en ley para hacerlo. Por su parte, el Centro Cultural ripostó y alegó en su favor que ellos habían estado en posesión del solar en concepto de dueños desde la fecha en que lo adquirieron (1981) y lo han venido utilizando para fines cívicos de forma continua e ininterrumpidamente. Además, presentaron una reconvención en la cual requerían del municipio que formalizara el contrato de compraventa de los terrenos donde se proponían construir el Centro Cultural. Para ello el municipio debería otorgar la correspondiente escritura de forma tal que pudiera inscribirse en el Registro de la Propiedad. El 7 de marzo de 1990 el anterior Tribunal Superior de Puerto Rico, Sala de Humacao, emitió sentencia en la cual declaró no ha lugar la demanda interpuesta y con lugar la reconvención y en su consecuencia ordenó al municipio a que procediera a otorgar la escritura de compraventa de la propiedad dentro de un término de 30 días de haber advenido firme la sentencia. Así las cosas, las partes participaron en numerosos trámites administrativos y extrajudiciales con miras a solicitar y obtener la aprobación de la Administración de Reglamentos y Permisos (A.R.P.E.) que permitiera la segregación del solar, la aprobación de planos, la concesión del permiso de construcción y otras gestiones relacionadas con el solar en controversia. Finalmente el 8 de febrero de 1994 el municipio otorgó a favor del Centro Cultural la escritura de rectificación de cabida, segregación, compraventa. En la misma se consignó en 960. 40 m. c. el área del solar segregado.
En marzo de 1994 el Centro Cultural presentó contra el municipio una demanda sobre injunction para retener la posesión. Allí alegó que ellos habían estado en posesión continua de 3,217.66 m.c. y que el municipio, a fines de febrero del mismo año, les había perturbado en su posesión. Alegaron que el municipio utilizando una pala mecánica, con el propósito de limpiar los terrenos para adjudicarlos a un tercero, había penetrado en el mismo interfiriendo así con la posesión que de hecho ostentaban los apelantes. Reclamaron además, que la actuación del municipio constituía una violación a sus derechos de propiedad sobre el solar. El municipio al contestar la demanda argüyó que el Centro Cultural nunca había poseído y mucho menos era dueño la parte demandante de terreno alguno en exceso de los 960 40 m.c. que le vendió por un dólar ($1.00) el municipio demandado conforme consta en la Ordenanza Núm. 3. También consignó que los terrenos colindantes a los 960.40 m.c. han sido utilizados y poseídos de forma continua e ininterrumpida por el municipio por sí o a través de quien hasta octubre de 1993 fueron sus arrendatarios, la Administración de Servicios Generales del Estado Libre Asociado de Puerto Rico.
El 11 de mayo de 1995 se celebró el juicio. Las partes estipularon veinte (20) piezas de evidencia que fueron enumeradas consecutivamente, a saber:

"I. Ordenanza Núm. 3, serie 1981-82. En ella se hace constar la venta por un dólar ($1.00) de un solar de 960.40 m.c. del Municipio al Centro Cultural de Las Piedras para la construcción de su sede.

II. Ordenanza Núm. 17, serie 1988-89. Deroga la Ordenanza Núm. 3, serie 1981-82.

III. Carta del Presidente del Centro Cultural dirigida a la Presidenta de la Asamblea Municipal 
*1259
del 18 de mayo de 1992. En ella solicitan la derogación de la Ordenanza Núm. 3; específicamente la sección primera donde se indica que se segregue un solar de 960.40 m.c. de cabida y solicitan a su vez, que la sección disponga segregar un solar de 3,217.66 m.c.

IV. Solicitud a A.R.P.E. para la segregación de un solar cuya cabida es de 960.40 m.c. En el memorial explicativo que acompañan con la solicitud se informa que la finca principal de donde se propone la segregación del solar es propiedad del gobierno municipal. Además, expresan que en el área están ubicadas otras dependencias municipales y estatales. Entre las municipales se encuentra la Guardia Municipal y Obras Públicas. En la estatal el Cuartel de la Policía.

V. Resolución de 15 de diciembre de 1993 en la cual A.R.P.E. aprobó el Plano de Inscripción y autorizó la segregación de un lote con una cabida de 960.40 m. c. Además se autorizó la rectificación en cabida de la finca principal.

VI. Escritura de rectificación de cabida, segregación y compraventa de un solar de 960.40 m.c. La misma se otorgó el 8 de febrero de 1994 ante el notario Juan Rosa Marcano entre el municipio de Las Piedras como vendedor y el Centro Cultural como comprador.

Vil. Carta del 13 de diciembre de 1994 del Centro Cultural al alcalde pidiendo el endoso para el proyecto de construcción de la sede del Centro Cultural.

VIH. Carta del 10 de enero de 1995 del alcalde a A.R.P.E. en la cual apoya el proyecto de construcción. En la comunicación se especifica que el terreno donde se construirá el Centro Cultural tiene una cabida superficial de 960.40 metros cuadrados. El alcalde condicionó el endoso a que "se prohíba la entrada de maquinarias, equipos y uso o depósito de materiales en predios colindantes propiedad exclusiva del Municipio de Las Piedras".

IX. Solicitud de Permiso de Construcción a A.R.P.E. La solicitud fue aprobada el 13 de febrero de 1995 y se expidió el correspondiente permiso el 3 de marzo de 1995. En los documentos sometidos el Centro Cultural consigna que el terreno en el cual construirán tiene una cabida de 960.40 m.c.

X. Diez fotos del predio de terreno. En ellas se aprecia una estructura de cemento y una verja de alambre eslabonado.

XI. Copia del plano de uso aprobado por A.R.P.E. El mismo certifica el solar con una cabida de 960.40 m.c.

XII. Plano de construcción de la sede del Centro Cultural. Dicho plano fue preparado a petición del Centro Cultural. En él se informa que el solar tiene una cabida de 960.40 m.c.

XIII. Resolución sobre estado provisional de derecho del 30 de mayo de 1989.

XIV.Croquis del solar preparado por el señor Ernesto González Beltrán, recaudador del municipio. En el croquis no se informa la cabida superficial del terreno ni se incluyen todas las colindancias. El croquis, según el testimonio en corte abierta del señor González Beltrán, fue preparado entre 1984 y 1986.

XV. 14 Fotografías.

XVI. Recorte del periódico El Oriental de 3 de junio de 1987. Se reseña la entrega de un donativo de la empresa privada al Centro Cultural para la construcción de su sede.

XVII. Fotocopia de dos fotos publicadas por el periódico El Oriental. Sin fecha.

XVIII. Consulta de conformidad con el Reglamento de Zonificación sometida a A.R.P.E. por el Centro Cultural a .través de los arquitectos Ribas Salvaty Martínez Joffre. el 9 de diciembre de 1988. En dicho documento se informa que el Centro Cultural se construirá en un terreno de 3,217.66 metros cuadrados.

*1260
XIX. Copia del plano sobre consulta de ubicación sometido a A.R.P.E. a instancias del Centro Cultural por los arquitectos Ribas Salvat y Martínez Jojfre el 9 de diciembre de 1988. Allí se ofrece el dato de que el Centro Cultural se construirá en un terreno cuya cabida es 3,217.66 m.c. Los exhibits XVIII y XIX fueron rechazados por A.R.P.E. por razón de que el Centro Cultural no tenía titularidad alguna sobre el terreno.

XX. 12 fotografías que ilustran etapas de la construcción."

Además de las piezas de evidencia estipuladas el Tribunal tomó conocimiento judicial del caso HPE89-1063 sobre "Sentencia Declaratoria con Remedio de Injunction y Acción Civil". También los demandantes-apelantes presentaron abundante prueba testifical. Examinada la totalidad de la prueba presentada confirmamos la sentencia apelada.
II
Nos corresponde examinar el derecho vigente en cuanto a la procedencia o no de un recurso de injunction para retener la posesión de un bien inmueble.
Las acciones de injunction para retener o recobrar la posesión son acciones en las que sólo puede litigarse el hecho y no el derecho a la posesión; las cuestiones de título deben ser dilucidadas en una acción plenaria independiente de la petición de injunction. Sucesión Figueroa v. Hernández, 72 D.P.R. 508 (1951). Véase además, Segarra Boerman v. Vilariño, 92 D.P.R. 314(965); Rodríguez v. Alcover, 78 D.P.R 822 (1955) y Janer v. Alvarez, 75 D P.R. 37 (1953).
Las Reglas de Enjuiciamiento Civil son aplicables en estos casos, pero sólo en su aspecto procesal. El injunction posesorio es un procedimiento de naturaleza sumaria y a éste no le aplican las Reglas de Procedimiento Civil. 32 L.P.R.A., Ap II, sees. 3261-3265; Sucesión Figueroa v. Hernández, supra y Disdier Pacheco v. García, 101 D.P.R. 41 (1973). Este recurso tiene el propósito de servir de remedio rápido y eficaz para el poseedor, de modo que lo proteja y desaliente que los ciudadanos recurran a la fuerza o a la violencia ante la amenaza o desposesión del inmueble que ocupaban. Disdier Pacheco v. García, supra. Lo anterior sin perjuicio de los derechos de los interesados, los que pueden y deben ser dilucidados en una acción plenaria. Janer v. Alvarez, supra. Véase además, Ramos v. Puig, 61 D.P.R. 83 (1942).
No siendo éste un prodedimiento que intente dirimir los conflictos de un título de propiedad, el demandado debe demostrar una posesión bona fide, no una reciente invasión en la propiedad de los demandantes. Sucesión Rivera v. González, 33 D.P.R. 1014 (1933). Quien promueva esta acción, aun cuando admita que no ha perdido absoluta y totalmente la posesión material, debe alegar bastantes actuaciones que demuestren la intención del demandado de llevar a cabo el despojo. Vázquez v. Maymí, 31 D.P.R. 609 (1923).
Los requisitos de la petición de injunction en cuanto al contenido de la demanda son los siguientes: debe (el demandante) estar en la posesión real de la propiedad descrita en la demanda dentro del año precedente a la presentación de ésta si trata de retener la posesión. Si lo que trata es de recobrar la propiedad debe haber estado en su posesión también dentro del año anterior a la presentación de la demanda. Debe hacer constar en la petición que ha sido perturbado o despojado de la posesión o tenencia. 32 L.P.R.A. see. 3562.
El Código de Enjuiciamiento Civil dispone además, que el peticionario de este injunction:
"Deberá también describir claramente los hechos constitutivos de la perturbación o despojo, así como si dichos actos fueron realizados por el demandado o por otra persona por orden de éste." 32 L.P.R.A., op cit.
Con respecto al requisito de haber estado en la posesión del bien el año precedente a la presentación de la demanda, la jurisprudencia nos ha dicho que debe interpretarse en el sentido de que el demandante en tal acción de interdicto posesorio, estuvo en la posesión dentro del año precedente de la presentación de la demanda y no por espacio de más de un año con anterioridad a la fecha de la alegada pérdida o de la perturbación en la posesión. Martorell v. Municipio, 70 D.P.R. 380 (1949). *1261 Cuando el demandante no demuestre que estuvo en la posesión material de la propiedad que reclama, dentro de un año con anterioridad a la interposición de su demanda, no procede el injunction para recobrar la posesión. Esto aún cuando tenga derecho por otros motivos a la posesión de la propiedad en controversia. Rivera v. Vargas, 43 D. P.R. 151 (1932).
III
La parte demandante-apelante plantea la comisión de siete errores por el Tribunal de Instancia. Los primeros tres errores señalados son en esencia uno sólo. Alegan éstos que incidió el Tribunal de Instancia al discutir dentro de la acción de interdicto para retener la posesión el hecho de la titularidad sobre los terrenos. En apoyo a su argumento, los demandantes alegaron que el Tribunal no sólo discutió el hecho de la posesión sino también la titularidad del predio.
Un examen de la Sentencia emitida por el Tribunal de Primera Instancia nos indica que ante el presente recurso, el juez tomó conocimiento judicial de la Sentencia de 7 de marzo de 1990 donde se le ordenaba al Municipio otorgar escritura de compraventa de los 960.40 metros cuadrados que estaban en pugna y que habían sido otorgados mediante la Ordenanza Municipal Número 3. Dispuso además, que la procedencia o no del recurso de autos versaría sólo en cuanto a la posesión material y no a la titularidad del terreno. Incluso, el Juez de Instancia claramente indicó que la sentencia que pronunciaba no tendría efecto de cosa juzgada sobre el derecho dominical de las partes sobre el terreno. De intentar dirimir el derecho de título sobre el exceso de los 960.40 metros cuadrados los aquí apelantes debieron acudir a través de una acción ordinaria.
Debemos recordar, que la acción que motiva la sentencia aquí apelada es la presentación de una demanda sobre injunction para retener la posesión de 3,217.66 metros cuadrados por parte del Centro Cultural de Las Piedras. No obstante, no existe duda alguna de que los demandantes-apelantes son dueños de 960.40 metros cuadrados, la abundante prueba (documental y testifical) resultó ser conflictiva en cuanto a la posesión material de hecho de 2,257.26 metros cuadrados. Según nuestro estado de derecho, para que proceda una acción como la que aquí se pretende, es necesario que el poseedor se encuentre en la posesión real de la propiedad descrita en la demanda dentro del año precedente a la presentación de ésta si como en este caso, lo que se pretende es retener la posesión del terreno.
En el caso de autos, el juzgador tuvo la oportunidad de escuchar a las partes y aquilatar la prueba. La credibilidad que le adjudicara a la misma le mereció el juicio de no ver probada la posesión material ni de hecho de los demandantes sobre el terreno en controversia. Como mencionáramos, la prueba presentada fue conflictiva en cuanto a este aspecto. Siendo ello así nos vemos en la obligación de respetar el juicio del juzgador de instancia ya que contó con oportunidad superior para examinar la prueba. La norma en estos casos es de deferencia al juicio que se emite en Instancia. Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975) y Moran Simó v. Gracia Cristóbal, 106 D.P.R. 155 (1977).
Reiteradamente hemos resuelto que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no hay fundamento en derecho que nos permita intervenir con el fallo de Instancia. Pueblo v. Pellot Pérez, 121 D.P.R. 791 (1988).
La parte demandante menciona como error del juez de instancia, desestimar la demanda de su propia iniciativa sin haber sido solicitado por la parte demandada. Tal señalamiento de error resulta inmeritorio; además, no se cometió. La parte demandada desde los inicios de este pleito ha solicitado la desestimación del mismo por entender que los demandantes no se encontraban en la posesión material de la propiedad.
Alegan los apelantes que fue un error de Instancia "...Ordenar al Municipio continuar los trabajos en los terrenos que ha estado poseyendo el Centro Cultural sin la sentencia dictada haber llegado a ser firme". Este señalamiento de error no tiene mérito ya que tal disposición del Juez de Instancia no le afectó derecho alguno a la parte demandante-apelante. Más aún, su derecho a apelar fue preservado.
Por último, nos es planteado como error el que se le impusiera a la parte demandante el pago de honorarios de abogado por la cantidad de $2,000.00. Tal error no fue cometido. En cuanto a la imposición de honorarios de abogado nuestro derecho es claro: "En caso que cualquier parte haya *1262 procedido con temeridad, el tribunal deberá imponerle en su sentencia el pago de una suma por concepto de honorarios de abogado". Regla 44.1 (d) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. El propósito de la mencionada regla es el de evitar que otra parte incurra en gastos y sufra las inconveniencias de un litigio innecesario. Aún cuando no se define en la regla el concepto temeridad, el mismo trata sobre la actitud que se proyecta sobre el procedimiento y la administración de la justicia. Fernández v. San Juan Cement Co., Inc., 118 D.P.R. 713 (1987).
En la determinación de si existe o no temeridad en la conducta de un litigante, el tribunal sentenciador hará uso de su sana discreción. No se dejará llevar en su análisis por,razón de quien aparezca como parte perdidosa en el pleito.
Tal determinación se podrá tomar, entre otras circunstancias, cuando: 1) el demandado contesta una demanda y niega su responsabilidad total aunque la acepte posteriormente; 2) se defiende injustificadamente de la acción; 3) no admite su responsabilidad limitada o parcial, a pesar de creer que la única razón que tiene para oponerse a la demanda es que la cuantía reclamada es exagerada, o 4) cuando se arriesga-a litigar un caso del que prima facie se desprende la negligencia. Fernández v. San Juan Cement Co., Inc., supra.
En el presente caso, los demandantes presentaron una acción de interdicto para retener la posesión cuando ni siquiera cumplían con el requisito primordial de éste, la posesión material de la propiedad descrita en la demanda. La imposición de honorarios de abogado está amparada en la sana discreción del juzgador y los hechos del presente caso no ameritan que intervengamos con la misma.
Por los fundamentos anteriormente expuestos procedemos a confirmar la sentencia apelada en la cual se declara SIN LUGAR la demanda incoada por los aquí apelantes, se le condena al pago de costas, gastos y de honorarios de abogado por la cantidad de $2,000.00 y se le permite al Municipio de Las Piedras continuar los trabajos en el terreno descrito en el párrafo quinto de la escritura número ocho del 8 de febrero de 1994, Exhibit VI.
Lo acordó el tribunal y lo certifica la Secretaria General.
Notifíquese por la vía ordinaria.
María de la C. González Cruz
Secretaria General