# 96 DTA 46

## TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL DE PONCE Y AIBONITO
### PANEL I

CLARISSA MIRANDA, ET ALS.
Demandantes-Apelados

v.

BANCO DE PONCE FEDERAL F.S.B.
Demandados-Apelados

Núm. KLAN-95-1282 cons. con Núm. KLAN-95-1284

San Juan, Puerto Rico, a 18 de marzo de 1996

Panel integrado por su presidente, Juez Sánchez Martínez
y los Jueces Córdova Arone y Segarra Olivero

Córdova Arone, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

En el caso de epígrafe se apela de una sentencia del Tribunal de Primera Instancia, Sala Superior de Ponce (Hon. Leida González Degró, J.) el 8 de agosto de 1996. Mediante la referida sentencia se declaró con lugar cierta demanda interpuesta por la Sra. Clarissa Miranda en cuanto a una reclamación por despido injustificado y sin lugar la acción de daños y perjuicios de los restantes demandantes. En su consecuencia se ordenó al Banco Ponce Federal la inmediata reposición en el empleo de la co-demandante, Clarissa Miranda y el pago de los salarios y beneficios dejados de percibir por ésta hasta que se produjera la reposición. ██ La sentencia apelada decretó la desestimación de la acción incoada contra el co-demandado Sr. Ramiro Colón disponiendo que la responsabilidad de pago de la compensación que correspondía a la demandante recaía sobre su patrono, el Banco Ponce Federal. Por último se le impuso al Banco el pago de las costas del proceso y $2,500.00 en concepto de honorarios de abogado. Por los fundamentos que se expresan más adelante en esta sentencia se confirma la sentencia apelada.

### I

Los hechos del presente recurso según fueron probados ante el Tribunal de Primera Instancia y a la luz de lo expuesto en los escritos ante nuestra consideración son los que se detallan a continuación.

La co-demandante, Clarissa Miranda Rodríguez, laboró como secretaria en la sucursal de Juana Díaz del Banco Ponce Federal (en adelante *"el Banco"*) hasta que fue despedida el 25 de marzo de 1988.

Surge de la prueba desfilada que a mediados del año 1985, mientras la Sra. Miranda se encontraba trabajando, recibió una llamada de su hija Neysa Torres Miranda quien le comunicó que dos agentes

federales la buscaban en su casa. La Sra. Miranda se dirigió a su casa y allí fue entrevistada por los agentes Ismael Guerra y Sheryl Katz en relación con unas supuestas transacciones ilegales consistentes en lavado de dinero que se habían efectuado en el Banco. Le fueron mostrados varios documentos los cuales identificó.

La Sra. Miranda notificó acerca de lo sucedido al presidente y al entonces vice-presidente del Banco, señores Ramiro Colón y José Alonso, respectivamente.

En el año 1986, la co-demandante fue entrevistada nuevamente acerca de las transacciones; esta vez por el fiscal Guillermo Gil. ■ En esta ocasión el fiscal Gil le reiteró que debía cooperar con la investigación a lo que la Sra. Miranda asintió. En esta ocasión la Sra. Miranda identificó ciertos documentos que le fueron presentados.

Luego de esta entrevista, la Sra. Miranda informó sobre la misma al gerente de la sucursal para la cual trabajaba, Sr. Angel Colón, y al vice-presidente incumbente, Sr. Andrés Viñas. Para esta época el hecho de la investigación que se efectuaba respecto al lavado de dinero en el banco había salido a la luz pública. Desde entonces comenzaron las presiones de parte de los directores y gerentes del Banco sobre la Sra. Miranda, solicitándole lealtad con la institución y haciéndole promesas de ascenso, por un lado, y amenazas de despido, por el otro.

Según las determinaciones de hechos del tribunal sentenciador, la Sra. Miranda continuó cooperando con las autoridades federales en la investigación siendo entrevistada en el año 1987 en el aeropuerto Mercedita de Ponce y en el año 1988 en el Banco. La Sra. Miranda mantuvo informados a sus superiores sobre estas gestiones y éstos continuaron solicitándole lealtad. ■ Posteriormente, el 25 de marzo de 1988, la Sra. Miranda fue despedida de su empleo sin recibir razones para ello en la carta de despido que le fue entregada.■

Con fecha de 17 de marzo de 1992, la Sra. Clarissa Miranda, su esposo, la sociedad legal de gananciales compuesta entre ambos y su hija presentaron una demanda en daños y perjuicios contra el Banco, el Sr. Ramiro Colón, el Sr. Andrés Viñas y el Sr. José Alonso, entre otros. En dicha demanda se alegó, en síntesis, que su despido fue el resultado de su cooperación con las autoridades federales y que tan pronto el Banco advino en conocimiento de la situación comenzó una conspiración y un patrón de persecución, presiones y amenazas contra la Sra. Miranda los cuales desembocaron en su despido y le causaron daños tanto a ella como a su familia. Alegó, además, que hubo discrimen en su contra. En la contestación a la demanda, el Banco negó los hechos esenciales de aquélla, levantando varias defensas afirmativas entre las cuales se encontraba la de que el único remedio a que tenía derecho la Sra. Miranda era el pago de la mesada la cual le había sido satisfecha.

Comenzado el proceso de descubrimiento de prueba el Banco presentó una moción de sentencia sumaria donde alegaba que partiendo de la premisa, negada por ellos, de que la demandante fue despedida por participar en una investigación federal, ésta no tenía derecho alguno a reclamar por el discrimen dispuesto en la Ley Núm. 100 de 30 de junio de 1959, según enmendada. Sostenía el Banco que lo único a lo que tendría derecho la demandante sería lo dispuesto por la Ley Núm. 80 de 30 de mayo de 1976, según enmendada. A tales efectos, el Banco solicitó que se desestimara la demanda incoada en su contra.

La parte demandante se opuso oportunamente a dicha solicitud de sentencia sumaria. El 25 de enero de 1994, el entonces Tribunal Superior, Sala de Ponce (Hon. Leida González Degró, J.) dictó una resolución declarando sin lugar la solicitud de sentencia sumaria. En dicha resolución, el tribunal *a quo* expresó que el pleito quedaba limitado a la reclamación civil de daños bajo el artículo del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141.

Durante la conferencia con antelación al juicio las partes estipularon ciertos hechos respecto al término en que estuvo empleada la Sra. Miranda con el Banco y la fecha de despido de ésta. En dicha conferencia las partes expusieron sus respectivas teorías, reiterándose la parte demandante en que el despido fue el resultado de su cooperación con la investigación federal.

La teoría del Banco sostenía que la Sra. Clarissa Miranda fue despedida de su empleo por haber

tenido conocimiento o participado junto a otros empleados en actuaciones de lavado de dinero y por proveer información falsa a las oficinas centrales del Banco Ponce Federal. El Banco sostenía que tales irregularidades, las cuales eran en violación de los reglamentos internos del Banco y de leyes federales, afectaban la buena imagen de la institución.

A la vista del caso comparecieron las partes representadas por sus respectivos abogados, excepto el co-demandado Ramiro Colón, a quien se le había anotado la rebeldía previamente. Antes de comenzar el desfile de la prueba se aclaró que además de la reclamación bajo el Art. 1802 del Código Civil, estaba también pendiente la acción por despido injustificado por la causal de haber participado la demandante en una investigación federal por actuaciones ilegales del banco demandado. ▊ También al inicio de la vista las partes estipularon lo que declararía el co-demandado Andrés Viñas ▊ y luego de ello la parte demandante informó que desistía de su reclamación, con perjuicio, en cuanto a dicho demandado, lo que fue aceptado por todas las partes y aprobado por el tribunal.

Del conjunto de la prueba desfilada en el juicio, el Tribunal de Primera Instancia concluyó que el despido de la Sra. Miranda fue ordenado por el presidente-del Banco teniendo éste conocimiento de la participación de la demandante en la investigación que se llevaba a cabo en relación con el supuesto lavado de dinero en el banco.

Por otra parte, surgió de la prueba desfilada que para principios del año 1988, el presidente del banco encomendó al Sr. Javier Portuondo Díaz, oficial de acatamiento y al oficial de seguridad, Sr. Ceferino Loyola, para que efectuaran una investigación de las operaciones de la sucursal de Juana Díaz. Fue luego de esa investigación que se ordenó el despido de la demandante.

Por información suministrada por la propia demandante, surgió de esa investigación que en el Banco *"vendían"* cheques a un hombre conocido por Chocolate quien era emisario y actuaba por encomienda del Sr. Víctor Casiano. Esos cheques se hacían a nombres ficticios. Con el dinero que enviaba el Sr. Casiano para comprar los cheques se encubría un esquema de lavado de dinero. La Sra. Miranda, quien realizaba las funciones de *"clerk typist"*, en ocasiones llenó el formulario de requisición de los cheques por encomienda del pagador-receptor o del gerente de la sucursal. Esta es una de las faltas que se señalan en el informe de la investigación interna realizada en el Banco.

En el referido informe se le imputa como falta a la demandante el hecho de que en una ocasión se certificó que en la sucursal de Juana Díaz se había efectuado una reunión de personal requerida por la reglamentación del Banco, sin que realmente se hubiese celebrado la misma. Surgió que la demandante firmó la certificación junto a los demás empleados.

Por último, el informe señaló que la demandante informó, al ser cuestionada acerca de si el Sr. Casiano daba comisiones o regalos a los empleados, que aquél llevaba unas cajas de vinos para Navidad y se repartían entre éstos.

Es a base de las faltas imputadas en el mencionado informe que el banco ha tratado de justificar el despido de la demandante en el caso de epígrafe.

El Tribunal de Primera Instancia concluyó como cuestión de hecho que no hubo causa justificada para el despido de la demandante. De acuerdo con la sentencia apelada, en primer lugar, lo único que estableció la prueba presentada respecto a la participación de la demandante en las transacciones de lavado de dinero del Sr. Víctor Casiano y Chocolate es que la Sra. Miranda se limitaba a llenar a maquinilla los formularios de requisición de cheques según le indicaba el gerente o el pagador-receptor. La Sra. Miranda no tenía autoridad para firmar ni firmó alguno de esos cheques.

La parte demandada no presentó un solo documento que hubiese sido preparado o firmado por la Sra. Miranda. Tampoco desfiló prueba alguna que estableciera que la demandante tuviera una relación directa con las transacciones del Sr. Casiano o que tratara de beneficiar a éste en forma alguna.

En segundo lugar, no se estableció que la demandante recibiera regalo alguno o parte del vino mencionado. Aunque se hubiese probado, no se estableció que tal actuación estuviera prohibida por los reglamentos del Banco. Concluyó el tribunal sentenciador que si ello hubiera estado prohibido y

fuera causa de despido, el Banco hubiera estado en la obligación de despedir a todos los empleados involucrados con tal repartición, cosa que no sucedió.

Concluyó, además, el tribunal *a quo*, que en cuanto a la certificación que firmaron los empleados sobre la reunión que debían celebrar y no celebraron, aún cuando ello puede constituir una falta, en este caso no justificaba el despido de la demandante. Según el Tribunal de Primera Instancia, la responsabilidad principal de organizar y dirigir la reunión y el adiestramiento era del gerente de la sucursal, no de la demandante. Por otro lado, expresa el tribunal que si esa falta fuese causa para el despido, debía entonces despedirse a todos los empleados que firmaron. Esto tampoco se hizo.

Surge del expediente de la demandante que ésta fue evaluada en varias ocasiones con buenas calificaciones. No surge de dicho expediente que la demandante hubiese cometido fallas o errores, excepto en el año 1982 que cambió un cheque sin la firma correspondiente, situación por la cual fue amonestada. ■

Como resultado de la investigación federal que se realizó, se radicaron cargos criminales ante la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico. El Banco hizo alegación de culpabilidad aceptando unos cargos mediante una alegación pre-acordada y se le impuso una multa ascendente a la suma de un millón quinientos mil dólares ($1,500,000.00). No obtstante, no se radicaron cargos contra funcionarios o empleados del banco.

Quedó establecido con la prueba presentada en el tribunal sentenciador que a partir del año 1986, la demandante comenzó a sentir las presiones de los altos oficiales del Banco requiriéndole su lealtad hacia la institución. Estas presiones incluian insinuaciones y amenazas de despido. La demandante sufrió angustias mentales, grandes preocupaciones, nerviosismo y temores desde entonces hasta el momento del despido en el año 1988. A partir de este momento los sufrimientos de la Sra. Miranda aumentaron sintiéndose humillada y avergonzada debido a que su despido se vinculaba a las transacciones ilegales del Banco. En esta situación estuvo alrededor de un año durante el cual tuvo que recibir asistencia profesional.

La demandante perdió los ingresos que obtenía de su empleo. Durante el primer año no pudo hacer gestiones para conseguir empleo debido a su condición emocional. Fue luego de transcurrido ese primer año que la demandante comenzó a hacer dichas gestiones resultando infructuosas.

Con estos hechos, el Tribunal de Primera Instancia dictó sentencia resolviendo el caso a la luz de las disposiciones de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, en particular lo dispuesto en las secciones 185a y 185b del mencionado estatuto. Según el tribunal *a quo*:

*"La prueba presentada por la parte demandada no fue suficiente para establecer causa justificada para el despido de la demandante. Por otro lado, la parte demandante presentó prueba que estableció que el despido ocurrió después que los directores del banco demandado supieron de la colaboración que estaba brindando la demandante en la investigación que realizaban agentes y fiscales federales, investigación que culminó con la radicación de cargos criminales contra el Banco, la alegación de culpabilidad y la sentencia impuesta. La prueba presentada por la parte demandada no estableció que la información que aportara la demandante en la investigación fuese difamatoria ni que fuera de carácter confidencial según la ley. Podemos inferir, por el contrario, que esa información no fue difamatoria en vista del resultado final de la investigación, que no llegó siquiera tener que presentarse prueba puesto que el Banco hizo alegación de culpabilidad."*

El tribunal sentenciador concluyó, además, que en el presente caso no se estableció la existencia de acción torticera del demandado independiente a la razón del despido. Por esta razón, no procedía reclamación alguna bajo el Art. 1802 del Código Civil.

Por estos fundamentos, la sentencia del Tribunal de Primera Instancia declaró con lugar la demanda en cuanto a la reclamación por despido interpuesta por la co-demandante Clarissa Miranda y sin lugar la acción de daños y perjuicios de los restantes demandantes. En consecuencia, se ordenó al Banco la inmediata reposición en el empleo de la Sra. Miranda y el pago de salarios y beneficios dejados de percibir por ésta hasta el momento que se produjera la reposición. Se desestimó la acción

interpuesta contra el Sr. Ramiro Colón, disponiéndose que la responsabilidad de pago de la compensación que correspondía a la demandante recae sobre el patrono, es decir, el Banco Ponce Federal. El tribunal impuso al Banco, por otro lado, el pago de las costas del procedimiento y $2,500.00 en concepto de honorarios de abogado.

Posteriormente, el Banco presentó una moción solicitando determinaciones de hechos y derecho adicionales la cual fue acogida en parte por el tribunal sentenciador. En su resolución, el tribunal enmendó la sentencia a los fines de incluir la suma devengada por la demandante por concepto de salario y otros hechos solicitados. La parte dispositiva de la sentencia quedó enmendada a los fines de indicar que de la cantidad que debía pagarse a la demandante por sueldos y beneficios dejados de percibir se dedujera la cantidad efectivamente pagada por el Banco por concepto de mesada.

Inconformes con la determinación del tribunal sentenciador, tanto la parte demandada, Banco Ponce Federal, como la demandante presentaron recursos de apelación ante este Tribunal. Ambos recursos fueron consolidados a petición de la parte demandante-apelante Banco de Ponce Federal, mediante resolución de 29 de diciembre de 1996. ■

En su escrito la parte demandada-apelante, Banco Ponce Federal, alega que el Tribunal de Primera Instancia cometió seis (6) errores al resolver el caso de epígrafe, a saber:

*"Primer Error: Erró el Honorable Tribunal de Instancia al declarar CON LUGAR la demanda y aplicar el remedio provisto por la Ley 80, toda vez que por Resolución, el Tribunal apelado determinó previo a la vista en su fondo que la controversia de autos quedó limitada a la procedencia de la acción de daños y perjuicios bajo el Art. 1802 del Código Civil de Puerto Rico, 31 LPRA 5141.*

*Segundo Error: Erró el Honorable Tribunal de Instancia al permitir una enmienda a las alegaciones, cuando a todas luces la reclamación basada en dicha enmienda estaba prescrita.*

*Tercer Error: Erró el Honorable Tribunal de Instancia al declarar CON LUGAR la demanda y ordenar la restitución en el empleo y que satisfaga el sueldo y beneficios dejados de percibir desde el despido hasta el presente, toda vez que la sentencia dictada es contraria a Derecho y a la política pública.*

*Cuarto Error: Erró el Honorable Tribunal de Instancia al ordenar a la co-demandada-apelante satisfacer a la demandante-apelada el sueldo dejado de percibir desde el momento del despido hasta el presente, sin deducir aquello que la demandante-apelada hubiera recibido de otros patronos.*

*Quinto Error: Erró el Honorable Tribunal de Instancia al aplicar la enmienda de la Ley Número 65 del 3 de julio de 1986 a la sección 185 (b), toda vez que el despido ocurrió como resultado de la investigación interna del banco, y no porque la demandante hubiera colaborado en una investigación administrativa, judicial o legislativa.*

*Sexto Error: Erró el Honorable Tribunal de Instancia al imponer a la co-demandada-apelante el pago de honorarios en favor de la demandante-apelada, toda vez que no incurrió en temeridad."*

Por su parte, la parte demandante-apelante, Clarissa Miranda *et als.*, alega en su escrito de apelación que el tribunal *a quo* cometió tres (3) errores al resolver el caso:

*"Primer Error: Erró el Tribunal Superior Sala de Ponce al no sentenciar en daños al co-demandado Ramiro Colón.*

*Segundo Error: Erró el Tribunal Superior, Sala de Ponce en no imponer responsabilidad a los demandados bajo el artículo 1802 del Código Civil con relación a los daños sufridos por los co-demandantes Carlos M. Torres y Neysa Torres Miranda.*

*Tercer Error: Erró el Tribunal Superior, Sala de Ponce, al determinar en su resolución, notificada en 24 de octubre de 1996, que el cómputo de la cantidad que debía pagarse a la demandante por sueldos y beneficios dejados de percibir se deduzca la cantidad efectivamente pagada por el*

*demandado como mesada."*

## II

Comenzaremos por señalar que el principio rector que guía nuestra función apelativa dispone que no se intervendrá con las determinaciones de hechos que haga un tribunal de primera instancia en ausencia de error manifiesto, prejuicio, parcialidad o pasión. *Pueblo v. Pellot Pérez,* 121 D.P.R. 791 (1988). Los juzgadores de hechos merecen gran deferencia y respeto en la solución justiciera de los conflictos, en la evidencia a recibirse y en la apreciación imparcial de la prueba. *Pueblo v. Nevárez,* 101 D.P.R. 11 (1973). De intervenir con sus determinaciones en ausencia de las situaciones mencionadas previamente, estaríamos usurpando las funciones adjudicativas del tribunal *a quo. Morán Simo v. Gracia Cristóbal,* 106 D.P.R. 155 (1977). Esto es así debido a que son los tribunales de primera instancia los que están en mejor posición de aquilatar la prueba que se desfila toda vez que tienen ante sí a los testigos y son partícipes directos de la discusión que allí se suscita. Los tribunales apelativos carecen de esta ventaja.

Por las razones antes expuestas nos limitaremos a determinar, en síntesis, si el tribunal apelado resolvió correctamente la controversia presentada ante su consideración a la luz de los hechos probados y las disposiciones de ley aplicables al mismo. Analizaremos, además, la forma de computar la compensación concedida a la parte demandante. Por último analizaremos el señalamiento de error referente a la imposición de honorarios de abogado.

En el presente recurso es preciso hacer un resumen del derecho aplicable y su génesis de manera que podamos visualizar con mayor claridad la adecuacidad de su aplicación. En Puerto Rico no fue hasta el 28 de abril de 1930, que en virtud de la Ley Núm. 43 se estableció el derecho del empleado contratado por tiempo indeterminado, que fuera despedido sin justa causa y sin previo aviso, a recibir de su patrono una compensación equivalente al salario de una semana, una quincena o un mes, según fuera el método de pago de sus salarios. ▮

Luego de 1930, lo relativo al despido sin justa causa del empleado por término indefinido fue objeto de varias enmiendas. La Ley 43 antes mencionada fue enmendada por la Ley Núm. 84 de 12 de mayo de 1943, la cual fue dejada sin efecto por la Ley Núm. 50 de 15 de abril de 1943. La Ley Núm. 50, a su vez, fue sustituida por la Ley Núm. 80 de 30 de mayo de 1976, según enmendada por la Ley Núm. 16 de 21 de mayo de 1982 y otras leyes posteriores.

Por otro lado, nuestra Asamblea Legislativa ha establecido otras leyes con el transcurso de los años que prohíben el despido del empleado que se encuentre en ciertas condiciones específicas.

Al día de hoy la tenencia de empleo en Puerto Rico está protegida de varias formas pudiéndose dividir en dos grandes categorías: (1) la legislación que prohibe el despido y que establece que el empleado puede solicitar su reinstalación al empleo de que fue despedido y; (2) la legislación que reglamenta el despido injustificado cuando éste no está prohibido y que dispone unos remedios económicos en caso de ocurrir el mismo, pero que no provee para la reinstalación.

Es dentro del segundo grupo donde, en términos generales, podemos ubicar a la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, 29 L.P.R.A. secs. 185a *et seq.* ▮ No obstante, la sección 185b de esta ley fue enmendada de tal manera que se produce un híbrido entre ambos grupos, proveyendo tanto un remedio económico como la reinstalación del empleado despedido sin justa causa.

El segundo párrafo de la mencionada sección fue sustancialmente enmendado en los años 1986 y 1991 mediante la Ley Núm. 65 de 3 de julio de 1986, la Ley Núm. 9 de octubre de 1986, y la Ley Núm. 115 de 20 de diciembre de 1991. ▮ Tal y como ha quedado redactado, este párrafo lee de la siguiente manera:

*"No se considerará despido por justa causa aquel que se hace por mero capricho de patrono o sin razón relacionada con el buen y normal funcionamiento del establecimiento. Tampoco se considerará justa causa para el despido de un empleado la colaboración o expresiones hechas por éste, relacionadas con el negocio de su patrono, en una investigación ante cualquier foro administrativo,*

*judicial o legislativo en Puerto Rico, cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley. En este último caso, el empleado así despedido tendrá derecho, además de cualquier otra adjudicación que correspondiere, a que se ordene su inmediata restitución en el empleo y a que se le compense por una suma igual a los salarios y beneficios dejados de percibir desde la fecha del despido hasta que un tribunal ordene la reposición en el empleo."* (Enfasis nuestro)

Como podemos observar, en aquellos casos donde se pruebe que el despido se debió a la colaboración del empleado ante ciertas investigaciones especificadas en la sección antes transcrita, el empleado así despedido tiene derecho bajo la Ley Núm. 80, además de la mesada, a que se ordene su reinstalación en el empleo y a que se le compense por los salarios y beneficios dejados de percibir. ▊ Esta es la situación en el caso de autos.

Ante este estado de derecho, podemos observar que el tribunal sentenciador resolvió adecuadamente la controversia ante su consideración toda vez que se probó que el despido de la demandante se debió a la cooperación de ésta con las autoridades federales en la investigación que se seguía contra su patrono.

Actuó correctamente el tribunal sentenciador al ordenar que de la compensación concedida se restara la cantidad efectivamente pagada por concepto de mesada toda vez que el banco la había pagado previamente. No hay disposición alguna en la ley que obligue al patrono a pagar nuevamente la mesada cuando éste la había pagado previendo la posibilidad de una Sanción judicial en su contra por despido injustificado. Decidir lo contrario desalentaría el pago de la mesada en casos de despido pues los patronos esperarían a que recayera una sentencia en su contra para pagar la misma y así evitar pagar la misma cantidad dos veces.

### III

Habiendo resuelto que el tribunal *a quo* dispuso adecuadamente del caso ante nuestra consideración en términos de la responsabilidad del patrono bajo la Ley Núm. 80, nos resta pronunciarnos en relación con la imposición de honorarios de abogado.

Aunque el tribunal cambió el curso del caso en el día del juicio esto en nada perjudicó a las partes, ya que la prueba previamente descubierta y anunciada que se tenía que presentar para establecer la causa de acción sea bajo la Ley 80 o el Art. 1802 de nuestro Código Civil, es la misma excepto por los daños y la Ley 80 propiamente establece éstos. (Véase escolio 12).

Confirmamos al tribunal *a quo* al concluir que la acción contra el Presidente Ramiro Colón fue correctamente desestimada, puesto que la responsabilidad de pago de la compensación que le corresponde a la apelante, Clarissa Miranda conforme a la Ley 80 recae sobre el patrono de ésta, Banco Ponce Federal. La acción que amerita la condena de honorarios de abogado es cualquiera que haga necesario un pleito que se pudo evitar, que lo prolongue innecesariamente, o que produzca la necesidad de que otra parte incurra en gestiones evitables. *Fernández v. San Juan Co., Inc.,* 118 D.P.R. 713 (1987). Además, el Tribunal Supremo de Puerto Rico expresó en *Fernández* que el propósito principal de autorizar la imposición de honorarios de abogado en casos de temeridad, es la de establecer una penalidad a un litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconvenientes de un pleito.

Nuestro más alto foro ha resuelto que no procede la imposición de honorarios de abogado, por razón de temeridad, en un caso donde una parte acude al tribunal, o se defiende, en relación con una cuestión que tiene acogida y adjudicación por primera vez en nuestra jurisdicción. *Brea v. Pardo,* 113 D.P.R. 217 (1982). Sin embargo, el hecho de que el punto resulte nuevo, no constituye *"carta blanca"* para actuar en forma temeraria. *Corpak, Inc. v. Ramallo Brothers Printing, Inc.,* 125 D.P.R. ___ (1990), **90 J.T.S. 37**. El mero hecho de que una cuestión sea debatible no exonera a una parte del pago de honorarios de abogado si la ley que rige la cuestión es tan clara que basta aplicarla a los hechos para poder decidirla sin dificultad. *Ramírez v. Club Cala de Palmas,* 123 D. P.R. 339 (1989). Sin embargo, el simple hecho de que una parte haya perdido el caso, no da base para penalizarlo con honorarios de abogado a favor de la parte victoriosa. *Raoca Plumbing v. Trans World,* 114 D.P.R. 464

(1983). La norma prevaleciente es que los honorarios de abogado se conceden por temeridad y dependen de la discreción del tribunal sentenciador. *Asoc. Cond. v. Trelles,* 120 D.P.R. 574 (1988). No se revisará una determinación de temeridad a menos que se demuestre que se ha cometido un abuso de discreción. *Montañez Cruz v. Metropolitan,* 87 D.P.R. 38 (1962).

No habiéndose demostrado que el Tribunal de Primera Instancia abusó de su discreción al imponer el pago de honorarios de abogado en el caso de epígrafe, este foro no intervendrá con tal determinación.

## IV

Por los fundamentos antes expuestos se confirma la sentencia apelada de 8 de agosto de 1996, tal y como fue enmendada mediante la resolución de 29 de septiembre de 1996.

Lo acordó el Tribunal y lo certifica la señora Secretaria General.

Sonia Pacheco Román
Secretaria General

### ESCOLIOS 96 DTA 46

**1.** Posteriormente se modificó la parte dispositiva de la sentencia a los fines de que se dedujera de esta cantidad la suma efectivamente pagada por la demandada a la demandante por concepto de mesada.

**2.** Esta entrevista se realizó en las oficinas del Departamento de Hacienda en Ponce.

**3.** La Sra. Miranda les indicó a los investigadores que ella había informado a sus superiores sobre los acontecimientos, pero aquéllos no le requirieron que mantuviera la situación en secreto, ya que la situación era de público conocimiento.

**4.** El Banco alega que pagó la suma correspondiente a la mesada dispuesta por la Ley Núm. 80.

**5.** Las razones para ello se expresan más adelante en la sentencia.

**6.** Su testimonio consistiría en sostener que para el año 1988 ocupaba la posición de vice-presidente ejecutivo del Banco; que recibió información del Sr. José Alonso Fernández de que la demandante le había informado acerca de la entrevista con los agentes federales y que le habían mostrado unos documentos preparados por ella. Señalaría, además, que le transmitió la información al presidente del Banco, Sr. Ramiro Colón, quien ordenó una investigación y luego de efectuada la misma se ordenó el despido de varias personas entre las que se encontraba la Sra. Miranda.

**7.** En esa ocasión se le informó que no recibiría aumento de sueldo alguno durante ese año.

**8.** El recurso presentado por la parte demandada fue identificado inicialmente con el número KLAN-95-01282; el presentado por la parte demandante recibió el número KLAN-95-01284.

**9.** Véase, R. Delgado Zayas, *Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño, San Juan,* Puerto Rico, 1989.

**10.** La sección 185a de la Ley Núm. 80 de 30 de mayo de 1976, según enmendada, establece, en parte:

*"Todo empleado de comercio, industria o cualquier otro negocio o sitio de empleo, designado en lo sucesivo como el establecimiento, donde trabaja mediante remuneración de alguna clase contratado sin tiempo determinado, que fuere despedido de su cargo sin que haya mediado una justa causa, tendrá derecho a recibir de su patrono en adición al sueldo que hubiere devengado:*

*(a) el sueldo correspondiente a un mes por concepto de indemnización;* (b) una indemnización progresiva adicional equivalente a una semana por cada año de servicio.

**11.** La Ley Núm. 65 de 3 de julio de 1986, añadió las dos últimas oraciones del segundo párrafo. La Ley Núm. 9 de 3 de octubre de 1986, en el segundo párrafo de la sección 185b, añadió la frase *"cuando dichas expresiones no sean de carácter difamatorio ni constituyan divulgación de información privilegiada según la ley"* y sustituyó *la frase final "hasta que un tribunal ordene la reposición en el empleo" con "hasta su reposición".*

Por su parte, la Ley Núm. 115 de 20 de diciembre de 1991, sustituyó las dos últimas palabras *"su reposición"* con *"que un tribunal ordene la reposición en el empleo".* Al momento del despido de la demandante esta última ley no estaba en vigencia.

**12.** A pesar de que el tribunal sentenciador erró al expresar que la controversia quedaba limitada a una acción por daños y perjuicios bajo el Art. 1802 del Código Civil en su resolución declarando sin lugar la moción de sentencia sumaria, este error quedó subsanado antes de comenzar la vista en su fondo.