Fiol Matta, Jueza Ponente
*1034 TEXTO COMPLETO DE LA SENTENCIA
En la presente sentencia se consolidan el recurso de apelación y el de certiorari instados por William L. McNeese. En el primero de los recursos se solicita la revocación de la sentencia final del Tribunal de Primera Instancia que dictaminó el divorcio entre Judy McNeese y William L. McNeese y que otorgó alimentos a los demandantes. En el segundo recurso se solicita la revisión de la resolución del Tribunal de Primera Instancia que, como parte del anterior procedimiento, concedió a los demandantes determinada cantidad en concepto de costas. Examinadas la apelación y el recurso de certiorari, a la luz de las disposiciones de ley y la jurisprudencia aplicable, se modifica la sentencia apelada, a los efectos de eliminar la concesión de la patria.potestad prorrogada a la madre de Terry McNeese y eliminar la imposición de intereses por mora sobre los aumentos retroactivos decretados en la sentencia y se expide el auto y se modifica la resolución recurrida, para eliminar de las costas los gastos concedidos para el investigador legal. Así modificadas, se confirman.
I
El 17 de agosto de 1990, Judy McNeese, por sí y en representación de sus hijos Terry y Tommy McNeese (en adelante los demandantes) presentó demanda ante el Tribunal de Primera Instancia contra su esposo, William L. McNeese (en adelante demandado), en la que reclamó alimentos para ella y sus hijos. Alegó que su esposo había abandonado la residencia conyugal desde el 5 de julio de 1990 y que no contaban con la capacidad para proveerse su sustento y necesidades básicas. En sus alegaciones hizo constar que su hijo Tommy era menor de edad y su hija Terry, aunque era mayor de edad, se encontraba incapacitada. Solicitó la custodia y patria potestad de sus hijos, o en la alternativa la tutela. Además, propuso que las relaciones patemo-filiales sólo se permitieran con la intervención de un terapista.
El 12 de septiembre de 1990, el tribunal emitió una orden sobre alimentos en la que ordenó al demandado, retroactivo al 17 de agosto de 1990, depositar en la unidad de alimentos del tribunal la cantidad de $1,000 mensuales por concepto de pensión alimentaria.
El 21 de septiembre de 1990, Judy McNeese enmendó la demanda para solicitar el divorcio por la causal de trato cruel. A esa fecha el demandado no había presentado su contestación a la demanda.
El 8 de octubre de 1990, el Tribunal de Primera Instancia dictó providencia judicial en la que fijó en $2,500 mensuales, mientras se dilucidaba el pleito, la pensión alimentaria en favor de los demandantes.
El 5 de diciembre de 1990, el demandado presentó su contestación a la demanda y Moción de Desestimación. En la misma, negó los actos de trato cruel, la existencia de una sociedad legal de gananciales, la paternidad de Terry McNeese, se negó a proveer alimentos a Terry y Tommy McNeese y sostuvo que no es posible tramitar un proceso de tutela dentro de un procedimiento de divorcio, debiendo recurrirse a un procedimiento especial.
En septiembre de 1991, el demandado dejó de pagar $1,200 de los $2,500 de la pensión alimentaria fijada en beneficio de Judy, Terry y Tommy McNeese. Él 16 de octubre de ese mismo año también dejó de pagar $500 de dicha pensión, alegando que su hijo Tommy ya había advenido a la mayoridad.
El 11 de marzo de 1992, el tribunal decidió permitir la solicitud separada de alimentos, presentada por Tommy McNeese, una vez alcanzó la mayoridad.
El 3 de abril de 1992, el tribunal ordenó al demandado depositar $9,600, cantidad que correspondía a la porción de la pensión alimentaria que había dejado de pagar durante nueve meses ($1,200 mensuales).
*1035 El 21 de julio de 1992, el demandado presentó reconvención en la que solicitó que se decretara el divorcio por la causal de separación. Esta reconvención no fue contestada por la demandante y se le anotó la rebeldía. También se le impusieron $300 en honorarios de abogado. El Tribunal de Apelaciones dejó sin efecto esta determinación de rebeldía, el 20 de enero de 1993.
El 22 de enero de 1993, la parte demandante presentó su réplica a la reconvención. Alegó que los actos de trato cruel, constitutivos de la causal de divorcio, dieron base a la separación física de los cónyuges.
En el presente caso y durante los meses de diciembre de 1990, abril y mayo de 1992 el Tribunal de Primera Instancia celebró treinta y dos vistas. Finalmente, luego de varios incidentes procesales, el 6 de marzo de 1995, se dictó la sentencia que declaró roto y disuelto el vínculo matrimonial entre las partes por la causal de trato cruel y desestimó la reconvención y mociones de desestimación. Además, el juez de intancia: (i) concedió la custodia y la patria potestad de la hija, Terry McNeese, a su madre, Judy McNeese; (ii) otorgó $2,000 por concepto de pensión alimentaria pendente lite para Judy McNeese, entre los que se incluyen $1,200 correspondientes a la renta de la vivienda familiar; (iii) concedió $1,400 de pensión alimentaria a favor de Terry McNeese; (iv) impuso al demandado la obligación de satisfacer todos los gastos médicos incurridos por los demandantes hasta la fecha de la sentencia; (v) exigió al demandado que adquiera un plan médico, para beneficio de la demandante Terry McNeese, de naturaleza análoga al que ésta tenía durante la vigencia del matrimonio entre sus padres; (vi) otorgó $500 mensuales por concepto de pensión alimentaria a Tommy McNeese mientras termina sus estudios de Bachillerato. Finalmente, impuso al demandado el pago de S7,900, por concepto de representación legal de los demandantes y concedió un plan de pagos para satisfacer parte de la obligación impuesta.
Contra dicho dictamen, el demandado interpuso la presente apelación, en la que nos solicita la revocación de la sentencia. En su escrito, aduce catorce (14) errores cometidos por el foro de instancia, argumentando, en esencia, que el mismo erró: (i) en su apreciación de la prueba; (ii) al permitir prueba sobre la incapacidad de Terry McNeese y resolver que la madre tiene patria potesdad extendida sobre Terry; (iii) al imponer intereses retroactivos sobre la obligación impuesta en la sentencia; y (iv) al hacer aplicable al caso la Ley de Sustento de Menores. 8 L.P.R.A. §501-529.
El 25 de marzo de 1996, el Tribunal de Primera Instancia aprobó costas por $11, 845.10 a favor de la parte demandante. Contra dicha resolución, el demandado presentó oportunamente el recurso de certiorari aquí consolidado. En esencia, planteó que el Tribunal de Primera Instancia erró al conceder gastos que no resultaron razonables ni necesarios a la resolución del pleito.
II
Surge del expediente en apelación que Judy Marie Miller y William Lynn McNeese contrajeron matrimonio, sin hacer capitulaciones matrimoniales ni acuerdos de separación de bienes, en octubre de 1968 en el estado de Tennessee. Durante los primeros años de matrimonio la pareja residió en Tennessee, mientras el esposo terminaba estudios universitarios.
El 19 de abril de 1969, nació Terry McNeese y fue inscrita en el Departamento de Salud de Tennessee como hija de William y Judy McNeese. Mientras, el 16 de octubre de 1970 nació Tommy McNeese, quien también fue inscrito como hijo de la pareja.
Una vez terminó sus estudios, William McNeese ingresó al ejército de los Estados Unidos, lo que obligó a la familia a trasladarse a cinco estados diferentes. Posteriormente, el demandado comenzó a trabajar con la compañía Owens Illinois. Se trasladó con su familia a Pennsylvania y allí compró un bien inmueble, que fue vendido cuando la compañía lo trasladó a Ohio. En este último, residieron menos de un año, cuando finalmente la familia se traslada a vivir a Puerto Rico en octubre de 1980. En Puerto Rico, la familia estableció su domicilio en Dorado. El juez de instancia encontró probado que habitaban una cómoda y lujosa residencia con servicio doméstico, de jardinería y limpieza de piscina. Tenían a su disposición, cuentas bancarias, dinero en efectivo y varias tarjetas de crédito. Eran miembros y frecuentaban las actividades del Hotel Dorado Beach. Sentencia, a la pág. 11.
*1036 La capacidad económica de la familia McNeese era producto, en particular, del trabajo que realizó William McNeese mientras trabajó con la compañía Owens Illinois. Además de su salario, el señor McNeese recibía reembolsos de gastos médicos y el pago de seguro médico, el pago mensual de $1,200 para la renta de la residencia familiar, pagos de servicios públicos, servicio de cable, uso de automóvil de la compañía, vacaciones fuera de Puerto Rico para todos los miembros de la familia, ajustes a su salario por concepto de costo de vida, entre otros. La familia contaba con numerosos bienes muebles, entre ellos, tres automóviles (BMW, Oldsmobile y Audi). La evidencia sobre los manejos económicos de la familia llevó al juez de instancia a concluir que en términos económicos "el centro de gravedad de la familia se desarrolló y estableció en Puerto Rico". Sentencia, a la pág. 14.
Para febrero de 1989, el señor McNeese renunció voluntariamente a su empleo en Owens y organizó la corporación T.T.M., Inc. Esta compañía fue incorporada bajo las leyes de Puerto Rico y su Presidente y Secretaria eran William y Judy McNeese, respectivamente. Esta corporación rindió servicios a varias corporaciones en Puerto Rico, cuyos dueños son el matrimonio de Raúl Slavin y Gilda Juliá. Con éstos, el señor McNeese cultivó una fructífera relación profesional. En cuanto a los asuntos financieros de la familia McNeese al momento de comenzar este pleito, en sus determinaciones de hechos el Tribunal de Primera Instancia concluyó que:

a"). El señor McNeese intentó aparentar una reducción de ingresos, pero su testimonio sobre su situación económica no ofreció credibilidad alguna. El juez de instancia catalogó la situación como una de economía subterránea de alta sofisticación, en la que el señor McNeese utiliza distintos nombres y corporaciones para ingresar y egresar dinero.

b). El señor McNeese había servido incluso, como oficial o director en empresas relacionadas con el grupo Slavin, por lo cual recibió beneficios a través de T.T.M., Inc.

c). La actividad económica del matrimonio incluyó además la compra de acciones de la corporación Harvard Development, Inc., corporación de Raúl Slavin y Gilda Juliá. Además, quedó demostrado que el señor McNeese era Director y agente residente de esta compañía. En agosto de 1990, el señor McNeese vendió estas acciones por el valor en los libros sin la autorización de la señora McNeese y luego fue sustituido como director de la compañía.

d). El señor McNeese, quien ofrecía servicios gerenciales a través de T.T.M., Inc. a The Irish Guard, una de las corporaciones de Raúl Slavin y Gilda Juliá, era la firma autorizada en la cuenta de banco de la compañía The Irish Guard. De esta cuenta extrajo sobre $23,000 en cheques a su nombre o en efectivo y endosados por él. En los documentos de esta cuenta se certificó que William McNeese era presidente de la corporación.

e). William McNeese abrió una cuenta bancaria a nombre de Ponce Industrial Security, firmando como William Jones y con un número de seguro social ficticio. A esa cuenta ingresó dinero no relacionado con sus ingresos de Owens Illinois o T.T.M., Inc.

f). T.T.M., Inc-, recibió pagos mensuales por cheques ascendentes a $6,500 de varias corporaciones pertenecientes a Raúl Slavin y Gilda Juliá. La cuenta bancaria de T.T.M. tenía un balance promedio mensual en exceso de $10,000.

g). T.T.M., Inc. pagaba la renta del apartamiento donde reside el señor McNeese, el automóvil BMW que utiliza éste y la gasolina consumida. En la Planilla de Contribución sobre Ingresos de T.T.M., Inc. se dedujo la totalidad de la renta del apartamiento donde reside William McNeese y los gastos de servicios públicos de dicho apartamiento. En fin, el tribunal concluyó que el señor McNeese generaba ingresos mensuales en exceso de $8,000."

Los gastos incurridos por sus hijos en los estudios universitarios en Estados Unidos fueron inicialmente pagados por el señor McNeese. Así, Tommy McNeese comenzó estudios en Tennessee en verano de 1988. El 2 de marzo de 1989, el padre le regaló un automóvil, marca Ford Mustang. El señor McNeese pagó por el auto $15,095.92 en efectivo. En el documento para la solicitud del préstamo para la compraventa del automóvil William McNeese informó que recibía ingresos anuales de $130,000 de T.T.M., Inc. Por su parte, Terry McNeese comenzó estudios universitarios en Estados *1037 Unidos en enero de 1988. El señor McNeese también cubría los gastos de Terry, que incluian $6,000 de matrícula por semestre y otros gastos relacionados.
En el verano de 1988, Terry McNeese regresó a Puerto Rico. Aquí, como resultado de una intoxicación severa catalogada por el juez de instancia como un intento de suicidio, sufrió daños cerebrales con la eventual pérdida de la memoria inmediata, problemas motores y de aprendizaje. El juez de instancia concluyó que estos problemas imposibilitaban e incapacitaban a Terry para acudir por sí sola a reclamar sus derechos en los tribunales. Nuevamente, parte de los gastos médicos iniciales fueron pagados por Owens Illinois. A tenor con el testimonio de dos peritos, como consecuencia de este episodio, Terry McNeese requiere supervisión constante, cuido físico, alimentación, terapia y psicoterapia para víctimas de traumas severos. Para junio de 1992, el seguro médico que pagó parte de los gastos médicos iniciales fue cancelado por falta de pago. El juez de instancia encontró probado que Terry no tiene bienes de naturaleza personal que le permitan atender sus necesidades. Una vez William McNeese abandonó el hogar en julio de 1990, Judy McNeese se encargó de cuidar y supervisar a Terry McNeese. Terry continuó recibiendo tratamiento médico.
El 20 de mayo de 1991 Judy y Terry McNeese recibieron amparo bajo el programa de protección de testigos del Departamento de Justicia y el 14 de agosto de 1991 el programa las trasladó junto a Tommy McNeese al estado de Tennessee. Mientras, Tommy se vio obligado a trabajar a tiempo completo y reducir sus estudios a unos a tarea parcial, para poder ayudar al sostenimiento de la familia. Esto porque William McNeese había cancelado las tarjetas de crédito que utilizaban los cuatro miembros de la familia, había cerrado las cuentas bancarias, incluyendo la personal y la de T.T.M., Inc., dejó de pagar deudas del matrimonio, los seguros médicos y los gastos universitarios de Tommy. En esencia, el señor McNeese dejó de aportar a los gastos de manutención y demás necesidades de su familia.
III
El primer planteamiento de error del demandado, ahora apelante-recurrente, intenta levantar un obstáculo procesal a la reclamación de alimentos en favor de su hija Terry McNeese. Alega el apelante-recurrente que el Tribunal de Primera Instancia erró al permitir prueba dentro del pleito de divorcio sobre la incapacidad de Terry McNeese. También sostiene que el tribunal erró al determinar que la madre tiene la patria potestad sobre Terry, aun cuando ésta es mayor de edad. Con este planteamiento de umbral el señor McNeese intenta que este Tribunal desestime la reclamación y revoque cualquier pronunciamiento relacionado del Tribunal de Primera Instancia.
Señala el apelante-recurrente que el nombramiento de un tutor supone una previa determinación de incapacidad en un procedimiento separado. Por consiguiente, la madre de Terry McNeese, según su contención, carece de capacidad jurídica para representar a su hija mayor de edad en su reclamación de alimentos. Para sustentar esta alegación, el señor McNeese invoca la aplicación de los Artículos 167, 168(2) y 180 del Código Civil, 31 L.P.R.A. §§ 661, 662, 674.
En el presente caso, el Tribunal de Primera Instancia hizo la determinación de incapacidad de Terry McNeese después de examinar prueba conducente a demostrar dicha incapacidad. Sentencia, determinaciones de hecho núms. 37-39 y 72. Luego de esto, permitió la continuación del procedimiento judicial. El Tribunal fundamentó su posición en la ausencia de disposición específica del Código Civil que requiera un procedimiento separado para declarar la incapacidad y nombrar tutor en situaciones como la que presenta Terry, quien advino incapacitada mientras era menor de edad.
Debemos señalar de entrada, que la ley no requiere indefectiblemente que se desestime una acción cuando quien reclama no es la persona que tiene capacidad de exigir el derecho que se invoca. Reglas de Procedimiento Civil, R. 15.1, 32 L.P.R.A. Ap. Ill, R. 15.1; Ríos Rosario v. Vidal Ramos, 134 D.P.R. _ (1993), 93 J.T.S. 113, a la pág. 10961. La norma que requiere que la demanda se establezca a nombre de la verdadera parte interesada está encaminada a proteger al demandado contra acciones posteriores que puedan instar quienes no hayan sido parte en el primer procedimiento y de esta forma, asegurar los efectos de cosa juzgada de toda providencia judicial. Prevor-Mayorsohn Caribbean v. Puerto Rico Marine, 620 F.2d 1, 4 (1980). En el presente caso, no existe riesgo de acciones posteriores similares, puesto que no hay ningún otro titular del interés alegado y la única parte interesada existente, Terry McNeese, no está capacitada para reclamar judicialmente su derecho.
*1038 Coincidimos con el Tribunal de Primera Instancia en que en el caso que nos ocupa no resultaba imprescindible levantar un expediente de incapacidad para declarar tutora a la madre de Terry. Ante la condición limitante de Terry y la imperiosa necesidad del derecho suplicado, el tribunal autorizó a la madre de Terry a actuar como tutor especial, a los fines de hacer viable el ejercicio del derecho reclamado. No erró en su determinación. Es importante señalar, que la Regla 1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 1, dispone que las mismas se interpretarán de modo que garanticen una solución justa, rápida y económica de todo procedimiento. En este caso, la economía procesal, al igual que la justicia, aconsejan el curso decisorio que aquí tomamos.
Como parte de este primer planteamiento de error, el apelante-recurrente también impugna la determinación del Tribunal de Primera Instancia reconociendo a la madre la "patria potestad prorrogada" sobre Terry McNeese. Esta figura, incorporada al Código Civil español como el Artículo 171 mediante la Ley de 13 de mayo de 1981, implica que la patria potestad sobre los hijos que sean incapacitados al momento de arribar a la mayor edad quedará prorrogada o extendida mientras perdure tal incapacidad. 
Examinado el derecho aplicable debemos concluir que el concepto de "patria potestad prorrogada" no forma parte del ordenamiento patrio. A tenor con el Artículo 152 del Código Civil de Puerto Rico, 31 L.P.R.A. 591, la patria potestad sobre los hijos menores no emancipados corresponde a los padres. Dicha patria potestad termina automáticamente por: (i) la muerte del hijo o de los padres, (ii) la emancipación, o (iii) la adopción del hijo. Artículo 163 del Código Civil, 31 L.P.R.A. 631. En cuanto a la emancipación, la ley reconoce cuatro clases: la concedida por los padres, la que surge por el matrimonio, la concedida judicialmente y la emancipación por mayor edad. Artículo 232 del Código Civil, 31 L.P.R.A. 901. Respecto a esta última, el Artículo 247 del Código Civi reconoce que la mayor edad comienza a los veintiún (21) años cumplidos. 31 L.P.R.A. 971.
Como puede observarse, el legislador estableció taxativamente las formas en que se extingue la patria potestad en Puerto Rico. La pertinente a este pleito, la mayor edad, no requiere siquiera de intervención judicial para que cumplidos los veintiún años termine la patria potestad de los padres sobre sus hijos. Si una vez termina la patria potestad el hijo se encuentra incapacitado para gobernarse por sí mismo, como ocurrió en el caso de Terry McNeese, el Codigó Civil dispone que deberá nombrarse un tutor. Artículo 167 del Código Civil, 31 L.P.R.A. 661.
Debemos recordar que la norma básica sobre interpretación de ley contenida en el Artículo 14 del Código Civil, 31 L.P.R.A. 14, nos requiere atender la letra de la ley, en ausencia de ambigüedad. Véase Ferretería Matos, Inc. v. P.R. Tel. Co., 110 D.P.R. 153, 156 (1980). Concluimos que el esquema claro y taxativo del Código no nos permite incorporar a nuestro ordenamiento jurídico una excepción a las formas de extinción de la patria potestad, sin previa expresión legislativa al efecto. Nada hay en el Código Civil o en nuestra jurisprudencia que nos autorice hacerlo. Tampoco encontramos como fundamento para ello imperativo constitucional alguno. 
Resolvemos, por tanto, que ante la enumeración taxativa del legislador de las formas en que queda extinguida la patria potestad y ante tal ausencia de mandato legislativo al respecto, no nos corresponde prorrogar o extender la patria potestad de la madre de Terry más allá de la fecha de su mayoría de edad. Véase Ríos Rosario v. Vidal Ramos, 134 D.P.R. _ (1993), 93 J.T.S. 113, a la pág. 10960. Por consiguiente, la sentencia del Tribunal de Primera Instancia debe modificarse para revocar la determinación que concedió la patria potestad prorrogada a la madre de Terry McNeese.
El segundo escollo procesal que presenta el demandado a su obligación de dar alimentos está contenido en su señalamiento de error número trece. Allí señala que el Tribunal de Primera Instancia erró al obligarlo a hacer pagos, so pena de encarcelarlo, al amparo de una sentencia que no ha advenido firme. Sostiene que los efectos de la orden sobre el pago de alimentos deben quedar suspendidos hasta la resolución de la presente apelación. Para fundamentar su planteamiento insiste en que no puede ejecutarse una sentencia hasta tanto no advenga final y firme, lo cual no sucede mientras no haya transcurrido el término para apelar, o habiéndose presentado la apelación, hasta que el tribunal apelativo la resuelva.
*1039 IV
En nuestras resoluciones de 13 de febrero de 1996 y 20 de marzo de 1996, denegamos una solicitud del demandado, sometida en auxilio de jurisdicción, que en esencia reproducía el señalamiento de error antes expresado, al efecto de requerir la suspensión de los efectos de la sentencia de alimentos aquí apelada. Resolvimos entonces, y reiteramos en esta ocasión, que la Regla 17(A)(2)(b)(2) del Reglamento del Tribunal de Circuito de Apelaciones no está reñida con el Artículo 4.002 de la Ley de la Judicatura de 1994, según la cual, la presentación de un recurso de apelación suspende los efectos de la sentencia apelada. A esos efectos, explicamos que la norma que recoge dicho artículo se incorporó a nuestro ordenamiento originalmente en los artículos 297 y 298 del Código de Enjuiciamiento Civil, 32 L.P.R.A. §5 1284-85, y señalamos:
"La norma que ahora recoge el artículo 4.002 de la Ley de la Judicatura nunca ha sido impedimento para que los tribunales apelativos ejerzan su discreción para suspender o dejar en vigor los efectos de una sentencia durante el trámite de su apelación." Resolución, pág. 2.
V
Alega el demandado, en su señalamiento de error número doce, que el Tribunal de Primera Instancia erró al determinar que la Ley de Sustento de Menores es de aplicación al caso de epígrafe. Sostiene que el tribunal aplicó la ley aunque no hay ningún menor en el caso. Además, en la alternativa, señala que el tribunal interpretó erróneamente el Artículo 19 de dicha ley al determinar que éste le permite hacer una determinación original de alimentos pendente lite y una segunda determinación en la sentencia.
La Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, 8 L.P.R.A. S 501-30, en su declaración de política pública, en lo pertinente, establece como su objetivo cardinal:
"[Pjrocurar que los padres o personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manuntención de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales, para la determinación, recaudación y distribución de las pensiones alimentarias. Las disposiciones de este Capítulo se interpretarán liberalmente a favor de los mejores intereses del menor o alimentista que necesita alimentos."Ley Núm. 5, Art. 3, 8 L.P.R.A. §502 (énfasis suplido).
Como puede observarse, la propia ley señala que procura hacer extensiva la protección de la misma a todos aquellos alimentistas que dependan para su sustento de los padres o de otra persona legalmente responsable. Más aún, la ley define el concepto alimentista como "cualquier persona que conforme a las disposiciones de ley alicables tenga derechos a recibir alimentos". Ley Núm. 5, Art. 2, 8 L.P.R.A. §501. En el caso de epígrafe, Terry McNeese advino incapaz a los 19 años, mientras sus padres ejercían la patria potestad y cuidado sobre ella. A la fecha de la presente reclamación de alimentos, Terry, aunque mayor de edad, se encontraba incapacitada para reclamar judicialmente su derecho. A esa fecha, Tommy McNeese, por su parte, era menor de edad. Al abandonar el señor McNeese el hogar y responsabilidades relacionadas, privó a sus dos hijos de la única fuente de ingresos para su sostén. La intrincada prolongación de este pleito permitió que Tommy adviniera a la mayoridad, sin que se hubiese puesto fin al litigio. Durante los años que se extendió la litigación en el Tribunal de Primera Instancia, la condición física y emocional de Terry requería que se le prestara asistencia económica. De la misma manera, las aptitudes educacionales de Tomumy lo hacían acreedor de igual provisión, según determinado por el juez de instancia.
Ante ese cuadro de hechos, limitar la aplicación de la ley exclusivamente a hijos menores, como pretende el demandado, estaría reñido con el claro mandato legislativo que establece que "en el caso de que la salud emocional del menor, así como sus necesidades y aptitudes educacionales o vocacionales lo requieran, la obligación de los padres podría continuar hasta después que el alimentista haya cumplido los veintiún (21) años." Ley de Sustento de Menores, supra, Art. 4. Sostenemos, entonces, que la Ley de Sustento de Menores es de aplicación al caso que nos ocupa. La propia Ley de Sustento de Menores aconseja la decisión aquí tomada, al imponer la obligación de interpretar las disposiciones de la ley liberalmente a favor de los mejores intereses de aquel alimentista que necesite sostén. Ley de Sustento de menores, supra, Art. 3.
*1040 En cuanto a la alegación del demandado acerca de que el Tribunal de Primera Instancia erró en su interpretación del Artículo 19 de la Ley de Sustento de Menores, baste mencionar que la determinación de la cuantía de los alimentos corresponde al prudente arbitrio de los tribunales, tomando en consideración la proporción entre el estado de necesidad del alimentista y la posibilidad económica del alimentante. Guadalupe Viera v. Morell, 115 D.P.R. 4, 14 (1983). Resolver que un tribunal no puede disponer aumentos retroactivos a la pensión alimentaria, sino que todo aumento debe ser efectivo a la fecha en que son dictados por el tribunal y no antes, como pretende el apelante-recurrente, coartaría peligrosamente la discreción del tribunal para determinar la medida de la necesidad y el momento oportuno para satisfacer la misma.
VI
Alega el demandado que el Tribunal de Primera Instancia erró al imponer intereses retroactivos sobre una obligación de alimentos que se estableció por primera vez en la misma sentencia. Se refiere a los aumentos a la pensión pendente lite que el juez decretó como retroactivos en su sentencia. Sostiene que en la vista celebrada el 22 de noviembre de 1995, el Tribunal de Primera Instancia aplicó intereses por mora a dichos aumentos retroactivos. Además, alega que la tasa de interés impuesta debe ser la de seis por ciento (6%) y no la de nueve y medio por ciento (9.5%) impuesta en la sentencia.
El juez de instancia señaló en su sentencia que la deuda por alimentos concedidos devenga intereses por mora, de mes en mes, o desde que venció o debió ser satisfecha la obligación. Sentencia, a la pág. 38. Fundamentó su conclusión en el Artículo 147 del Código Civil y en Martínez v. Rivera, 116 D.P.R. 164 (1985).
: El Artículo 147 dispone:

"La obligación de dar alimentos será exigible desde que los necesitare para subsistir la persona que tuviere derecho a percibirlos; pero no se abonarán sino desde la fecha en que se interponga la demanda.

Los alimentos concedidos comenzarán a devengar intereses legales por mora, desde el momento en que se dicte sentencia o si es de mes a mes, desde que venció o debió ser satisfecha la obligación." 31 L.P.R.A. § 566.
El tercer párrafo de este Artículo fue añadido mediante enmienda en 1993. Este párrafo acogió una norma jurisprudencial expresada en Martínez v. Rivera, supra, al efecto de que las deudas por pensiones alimentarias devengan intereses por mora. En ese caso, ante una sentencia dictada e incumplida, el Tribunal Supremo señaló: "las sentencias y resoluciones en casos de pensiones de alimentos devengan intereses por mora.... Se computan desde el momento en que se dictó la sentencia, o si es de mes en mes, desde que venció, o debió ser satisfecha". Martínez v. Rivera, a la pág. 170. La mora a la que hace referencia el citado caso, es a la que se incurre a partir del momento en que se concede ésta por sentencia o resolución, o en el caso de que la sentencia o resolución haga referencia a cantidades a ser satisfechas en el futuro, a la mora en que se incurre a partir de la fecha futura en que debió satisfacerse tal obligación. El ratio decidendi del caso no puede ser extendido más allá de la situación que tuvo ante sí el Tribunal Supremo. Obsérvese que el caso trataba sobre una sentencia incumplida, por lo que el tribunal impuso la obligación de pagar intereses por mora a partir de la sentencia.
El caso de Martínez y la enmienda al Artículo 147 del Código Civil, deben ser interpretados en el sentido de permitir la imposición de intereses por mora cuando, en efecto, el obligado incurrió en el retraso culposo que da origen a la morosidad. Véase Rodríguez Sanabria v. Soler Vargas, 135 D.P.R. _ (1994), 94 J.T.S. 59, en donde el Tribunal Supremo concluyó que ante el reiterado patrón de incumplimiento craso con la pensión fijada por el tribunal de instancia en favor de sus hijos, el alimentante estaba obligado a pagar intereses por mora. En este caso, el alimentante dejó de cumplir con su obligación luego de que el tribunal de instancia erróneamente dictara una resolución en la que ordenaba la suspensión del pago de las pensiones alimentarias adeudadas y las futuras. Luego de revocar dicha resolución del tribunal de instancia, el Tribunal Supremo, a pesar de que el alimentante había sido erróneamente inducido por el tribunal de instancia a pensar que no estaba obligado a pagar *1041 la pensión alimentaria, determinó que éste debía pagar intereses por mora por la cantidad no satisfecha a partir de la resolución. Para sostener la imposición de intereses por mora, el Tribunal Supremo concluyó que el caso presentaba unas circunstancias particulares que exigían que no se abordara la solución como un caso corriente de mora. Destacó que el alimentante era un consuetudinario deudor de las pensiones alimentarias fijadas por el tribunal y que observó durante años una conducta irresponsable para con sus hijos. Procedió entonces, a catalogar como retraso culposo el incurrido por el alimentante a partir de la resolución revocada.
El caso que nos ocupa puede distinguirse del caso de Rodríguez Sanabria v. Soler Vargas, supra. Aquí se trata de la imposición de unos aumentos impuestos en la sentencia con carácter retroactivo. Por tanto, el demandado desconocía su obligación y no pudo, por ende, incurrir en el retraso culposo que da origen a la morosidad. Concluimos que el Tribunal de Primera Instancia no puede imponer intereses por mora a los aumentos retroactivo a la pensión pendente lite dictados en la sentencia. Procede imponer intereses por mora tan sólo sobre aquellas cantidades pendente lite fijadas originalmente por resolución del tribunal y no satisfechas por el demandado.
Finalmente, la contención del demandado al efecto de que la tasa de interés legal por mora impuesta no debe ser la de nueve y medio por ciento (9.5%) impuesta en la sentencia sino la de seis por ciento (6%), según dispuesto por el Artículo 1061 del Código Civil, 31 L.P.R.A. § 3025, no encuentra apoyo en nuestra legislación.
El citado Artículo 1061 expresamente señala que mientras el Gobierno no fije otro por ciento, se considerará el seis por ciento (6%) como la tasa de interés legal. A su vez, como ya hemos visto, el tercer párrafo del Artículo 147 del Código Civil, 31 L.P.R.A. § 566, dispone que los alimentos devengarán el interés legal desde que surje la obligación de prestarlos. En la Exposición de Motivos de la ley que añadió este párrafo al Artículo 147, Ley Núm. 131 de 17 de diciembre de 1993, el legislador se refirió a la norma adoptada por la jurispmdencia del Tribunal Supremo de Puerto Rico, según la cual, "todo pronunciamiento judicial de pensiones de alimentos devengará intereses legales de conformidad con las disposiciones de la Regla 44.3(a) de Procedimiento Civil".
La Regla 44.3(a), por su parte, estatuye como interés legal el tipo fijado periódicamente por la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras que esté en vigor al momento de dictarse la sentencia. 32 L.P.R.A Ap. Ill, R. 44.3(a). Como puede observarse, al apartarse del interés del seis por ciento (6%) establecido en el Artículo 1061 de Código Civil, el juez de instancia lo hizo siguiendo el mandato legislativo.
VII
Alega el demandado, en su señalamiento de error número tres, que el Tribunal de Primera Instancia erró al no permitir la defensa que establece el Artículo 150 del Código Civil, que libera al alimentante de alimentar a aquél que le hubiese acusado de algún crimen o delito al que la ley señale pena aflictiva, cuando la acusación sea calumniosa. Sostiene que en la demanda se le imputó abusar sexualmente de Terry y de haber escalado su propia casa apropiándose de bienes muebles. Además, alegó que el tribunal erró al no conceder nuevo juicio para traer esta defensa.
Aunque en su Moción de Nuevo Juicio no lo señala, la misma debe estar amparada en el inciso (c) de la Regla 48.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 48.1, dirigida a mover la discreción del tribunal cuando la justicia sustancial así lo requiera. Sostenemos que el Tribunal de Primera Instancia ejerció prudentemente su discreción al denegar la moción de nuevo juicio. Veamos.
El Artículo 150 del Código Civil establece en su inciso cuarto (4) que cesará la obligación de dar alimentos "[cjuando el alimentista, sea o no heredero forzoso, hubiese cometido alguna falta de las que dan lugar a la desheredación." 31 L.P.R.A. 569. Son causas de desheredación, conforme al Artículo 777 del Código Civil, 31 L.P.R.A. 2455:
"(i) las de incapacidad por indignidad para suceder, contenidas en el Artículo 685 del Código Civil, entre las que se encuentra: "el que hubiese acusado al testador de delito al que la ley señale pena aflictiva, cuando la acusación sea declarada calumniosa", 31 L.P.R.A. 2261(3); y
*1042 (ii) las ocho causas enumeradas en el Artículo 778, 31 L.P.R.A. 2456, entre las que se encuentra, en lo pertinente al presente caso, "haber acusado el hijo a su padre o madre de algún crimen, excepto cuando fuere de alta traición", 31 L.P.R.A. 2456(5).
Los citados artículos del Código Civil provienen del anterior Código Civil de 1902, y se han comentado muy poco en nuestra glosa interpretativa. Al interpretarlos y aplicarlos debemos hacerlo conforme al propósito social que los inspira, sin desvincularlos de la realidad y el problema humano que pretenden resolver. Véase Pueblo v. Sierra Rodríguez, 137 D.P.R. _ (1995) 95 J.T.S. 11, a la pág. 609. Por tanto, estamos obligados a otorgarles un alcance que no esté reñido con la política pública ni con la naturaleza del derecho reclamado, según explicada por nuestra jurisprudencia tras la aprobación de la Constitución de Puerto Rico. El Tribunal Supremo ha reconocido que el derecho a reclamar alimentos tiene su raíz en el derecho constitucional a la vida contenido en la Sección 7, Artículo II de la Constitución del Estado Libre Asociado de P.R. Véase Martínez v. Rivera, 116 D.P.R. 164 (1985). Además, ha sostenido reiteradamente que los casos de alimentos están revestidos del más alto interés público. Véase Martínez v. Rivera, supra; Key Nieves v. Oyóla Nieves, 116 D.P.R. 261 (1985). Es por ello que coincidimos con el Tribunal de Primera Instancia en que debemos interpretar restrictivamente las mencionadas disposiciones del Código Civil, de forma que no se lacere innecesariamente un derecho de reconocida alta jerarquía como el de reclamar alimentos. Proponer lo contrario, como lo hace el apelante-recurrente, estaría en directa contravención al orden público.
El Tribunal de Primera Instancia señaló, a nuestro juicio muy atinadamente, que para dar paso a lo dispuesto por el Artículo 150 del Código Civil en cuanto al cese de la obligación de alimentar, es necesario prueba de la malicia, calumniosidad y falsedad de la acusación que del alimentante hace el alimentista. Fundamentó su posición en lo expresado por el Tribunal Supremo en Rodríguez Amadeo v. Santiago Torres, 133 D.P.R. _ (1993), 93 J.T.S. 106. Con ello hizo extensivo lo allí resuelto para casos en que la causa de desheredación es la injuria grave de palabra - contenida en el inciso (2) del Artículo 778 - a los casos en que el alimentista acusa al alimentante de algún crimen o delito. En el caso que nos ocupa, el Tribunal de Primera Instancia encontró probado que no se demostró la calumniosidad de la acusación, por lo que no procedía despojar, en esta etapa, a los demandantes de su derecho a alimentos. Resolver lo contrario, nos llevaría a que cualquier reclamo que hiciera un cónyuge o hijo al alimentante podría lesionar su derecho a alimentos, lo que tendría a su vez el efecto de desalentar que se informen al orden público aquellas transgresiones de las que son víctimas los potenciales alimentistas.
VIII
Los restantes señalamientos de error del apelante-recurrente exigen que intervengamos con la discreción ejercitada por el Tribunal de Primera Instancia. Al analizarlos resulta necesario revisar las determinaciones de hecho del Tribunal.
El Tribunal Supremo ha señalado que aunque la discreción del juzgador de los hechos no es absoluta, un tribunal apelativo no debe intervenir con la apreciación de la prueba por el tribunal de instancia, en ausencia de pasión, prejuicio o error manifiesto. Méndez de Rodríguez v. Morales Molina, _ D.P.R. _ (1996), 96 J.T.S. 149, a la página 347; Benitez Guzmán v. García Merced, 126 D.P.R. 302, 308 (1990).
Es por esto que las determinaciones del tribunal sentenciador en el caso ante nos no deben descartarse ni sustituirse por este Tribunal a menos que carezcan de base suficiente en la prueba presentada. El apelante no nos ha demostrado que el juzgador de los hechos cometió error al apreciar la prueba desfilada, ni que actuó movido por prejuicio, parcialidad o pasión. Tampoco nos ha demostrado que haya hecho uso arbitrario de su discreción, ni que su apreciación de los hechos se aleje de la realidad ni sea inherentemente imposible. Más aún, en nuestra Resolución de 13 de febrero de 1996, advertimos al apelante William McNeese, que visto los señalamientos de error presentados en su escrito de apelación, debería informar a este tribunal sobre la necesidad de considerar la prueba oral recibida por el Tribunal de Primera Instancia y la forma en que proponía sometérnosla. No obstante, nada ha dispuesto el apelante sobre este particular. No hay, por ende, fundamento en derecho para intervenir con la apreciación de la prueba, sin usurpar las funciones adjudicativas del Tribunal de Primera Instancia. Morán Simó v. Gracia Cristóbal, 106 D.P.R. 155 (1977).
*1043 IX
Réstanos por considerar los planteamientos que por medio de la petición de certiorari hiciera el demandado acerca de las costas impuestas por el Tribunal de Primera Instancia.
Nos corresponde examinar si el Tribunal de Primera Instancia abusó de su discreción al imponer costas por $11,845.10. De entrada, merece destacarse que los tribunales tienen amplia discreción bajo la Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 44.1, para fijar las costas que un litigante perdidoso debe reembolsar al litigante vencedor. Garriga, Jr. v. Tribunal Superior, 88 D.P.R. 245, 255 (1963).
La posición del demandado-recurrente puede resumirse de la siguiente manera: en primer lugar, objeta los honorarios reclamados por el perito de la parte demandante. En segundo lugar, no objeta el importe, sino si procede en derecho el pago de las siguientes partidas impugnadas: (i) intérprete para dos deposiciones, (ii) labor realizada por investigador legal, y (iii) gastos de viaje y alquiler de auto.
A. Honorarios del perito
Es claro que el derecho a recobrar los gastos incurridos por una parte en presentar testimonio pericial dependerá de la discreción del tribunal sentenciador. Así, serán recobrables los honorarios de un perito, por vía de excepción, cuando estén plenamente justificados. Andino Nieves v. A.A.A., 123 D.P.R. 712 (1989). Al pasar juicio sobre la procedencia del pago, el tribunal deberá evaluar la naturaleza y utilidad de la intervención del perito, a la luz de los hechos particulares del caso y deberá considerar si el perito contribuyó a suplir la necesidad de peritaje que tenía el tribunal. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443, 461 (1985); Meléndez v. Levitt & Sons of P.R., 104 D.P.R. 797, 811 (1976); Toppel v. Toppel, 114 D.P.R. 16, 21 (1983).
El demandado alega que la demandante no tiene derecho a reclamar el costo de la comparecencia de la perito porque su testimonio se trajo para establecer la incapacidad mental de Terry McNeese sin que se hubiera controvertido dicha incapacidad y que, en la alternativa, sólo correspondería pagarle lo correspondiente a un testigo corriente.
En el presente caso, la perito fue traída para testificar acerca de la permanencia de la incapacidad y sobre las necesidades actuales de tratamiento y cuido de Terry. Véase Sentencia, determinación núm. 39, a la pág. 18. El Tribunal de Primera Instancia, con el conocimiento de los hechos esenciales del caso, estimó que el testimonio de la perito era necesario y que la cuantía reclamada era razonable. Ante ese cuadro de hechos, el apelante-recurrente no nos ha demostrado que el Tribunal de Primera Instancia cometiera un abuso de discreción de magnitud suficiente para revocar esta determinación.
Finalmente, es pertinente abordar la contención del demandado con relación a la cuantía de los honorarios concedidos a la testigo pericial. Sostiene el demandado que el Tribunal de Primera Instancia sólo podía conceder por el testimonio pericial lo correspondiente a otros testigos no periciales. Apoya su contención en Crawford Fitting Co. v. J.T. Gibbons Inc., 482 U.S. 437 (1987), que señala que, ausente una autorización estatutaria, una parte que presenta un perito sólo tiene derecho a recobrar como costas la cantidad fijada para un testigo corriente. Con esta determinación, el Tribunal Supremo federal revocó el caso Farmer v. Arabian American Oil Co., 379 U.S. 227 (1964), que establecía que los tribunales tenían discreción, bajo la Regla federal 54(d) de Procedimiento Civil, para conceder costas que no estuviesen expresamente autorizadas por ley. Con este razonamiento, el demandado intenta argüir que después de Crawford Fitting Co. v. J.T. Gibbons, Inc., supra, el Tribunal de Primera Instancia carecía de discreción para otorgar una cantidad en exceso a la otorgada a un testigo corriente. No le asiste la razón.
Nuestra Regla 44.1 de las de Procedimiento Civil, a diferencia de la correspondiente regla federal, expresamente concede tal discreción al tribunal al señalar que las costas "son los gastos incurridos en la tramitación de un pleito... que la ley ordena o que el tribunal en su discreción, estima que un litigante debe reembolsar a otro". 31 L.P.R.A. Ap. Ill, R. 44.1(a) (énfasis suplido). Este claro mandato legislativo no puede ser suplantado por el análisis utilizado, ante una situación legislativa distinguible a la nuestra, por el Tribunal Supremo federal.
*1044 B. Intérprete e investigador legal
En Garriga v. Tribunal Superior, supra, el Tribunal Supremo citó con aprobación a Bennett Chemical Co. v. Atlantic Commodities Ltd., 24 F.R.D. 200 (1959), en donde se aprobaron gastos de traducción. En el caso que nos ocupa, el Tribunal de Primera Instancia encontró que los gastos de traducción eran razonables y necesarios al trámite del pleito, por lo que eran recobrabíes bajo el concepto de costas. Su conclusión, fundamentada en su amplia discreción como juzgador de instancia, encuentra apoyo en el récord.
No podemos llegar a la misma conclusión con relación a los gastos del investigador legal utilizado para investigación en el Registro de Corporaciones en el Departamento de Estado. No cabe duda de que el trabajo realizado por el investigador debe ser calificado como trabajo de asistencia legal o paralegal. El Tribunal Supremo ha señalado que la función del paralegal es una extensión de la función del abogado y por ende, no puede recobrarse como costas del procedimiento. Andino v. A.A.A., 123 D.P.R. 712, 718 (1989).
C. Gastos de viaje y alquiler de auto
Un tribunal puede conceder costas incurridas por concepto de transportación de testigos, en la medida que determine que las declaraciones de dichos testigos eran relevantes, materiales y necesarias para la disposición del caso. Garriga, Jr. v. Tribunal Superior, supra, a la pág. 255. En el caso que nos ocupa, encontramos base en el récord para sostener que el Tribunal de Primera Instancia no abusó de su discreción al incluir estos gastos como costas del proceso. Los demandantes se habían trasladado a Tennessee como consecuencia de una orden de protección dictada a su favor. La presencia de la parte demandante era importante para que el tribunal pudiera formular un dictamen judicial informado. El apelante-recurente no ha movido nuestro ánimo para intervenir con la discreción del juez de instancia.
X
Por los fundamentos antes expuestos, se modifica la sentencia apelada, a los efectos de eliminar la concesión de la patria potestad prorrogada a la madre de Terry McNeesé y eliminar la imposición de intereses por mora sobre los aumentos retroactivos decretados en la sentencia, y así modificada se confirma.
A su vez, se expide el auto y se modifica la Resolución recurrida, para eliminar de las costas concedidas $150.00 correspondientes a los gastos del investigador legal, y así modificada se confirma.
Lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97DTA53
1. Entre los incidentes se incluye una orden del Tribunal Supremo que le fijó un término al juez de instancia para emitir la sentencia. En su sentencia, el juez señaló que en el presente caso las partes sometieron una gran cantidad de mociones y escritos "que han caracterizado la enmarañada litigación de este caso, convirtiéndolo así en uno procesalmente complejo y extenso". Sentencia, pág. 2.
2. El demandado solicitó al Tribunal de Primera Instancia que emitiera determinaciones de hecho adicionales, mediante moción presentada el 30 de marzo de 1995 y solicitó nuevo juicio, mediante moción fechada 19 de julio de 1995. El 22 de noviembre de 1995 el tribunal celebró una vista en la que desestimó ambas mociones.
3. El juez de instancia señaló que las siglas hacían referencia a los nombres de los hijos Terry y Tommy McNeese. Sentencia, pág. 13.
4. Mientras estudió, Tomny mantuvo un adecuado aprovechamiento académico. En diciembre de 1991, Tommy *1045 perdió su empleo a tiempo completo como consecuencia de problemas económicos del patrono.
5. Esto provocó que se presentaran demandas e incluso que se reposeyera el automóvil que utilizaba Judy McNeese. Sentencia, a la pág. 15.
6. Esta extensión de la patria potestad fue catalogada como una interesante novedad cuya utilidad principal descansaba en la agilidad procesal que promovía, ya que, de ordinario carecía de sentido constituir la tutela en estos casos. CASTAN, DERECHO CIVIL ESPAÑOL, COMUN Y FORAL, Tomo V, Volumen II, págs. 339-40. Véase además PUIG BRUTAU, FUNDAMENTOS DE DERECHO CIVIL, Tomo IV, págs. 274-77 (1985); ALBALADEJO, COMENTARIOS AL CODIGO CIVIL Y COMPILACIONES FORALES, Tomo III, Volumen II, págs. 245-51 (1982).
7. Contrario al caso de Figueroa Ferrer v. E.L.A., 107 D.P.R. 250 (1978), que vio nacer una causal de divorcio no contemplada en el Código, como resultado de la protección constitucional a la intimidad.
8. Dicha regla en lo pertinente dispone:

"A. Casos Civiles

(1).

(2) cuándo no se suspenderá

No se suspenderán, a menos que el Tribunal de Circuito de Apelaciones así lo disponga expresamente, los efectos de una decisión emitida en un caso proveniente del Tribunal de Primera Instancia que:

(a).

(b) incluya cualesquiera de los remedios siguientes:

(1).

(2) Una orden sobre pago de alimentos."

9. Este mandato legislativo, en cuanto a las aptitudes educacionales, recoge el criterio jurisprudencial expresado por nuestro Tribunal Supremo un año antes de la aprobación de la Ley de Sustento de Menores, al efecto de que el deber legal de proveer los medios económicos necesarios para la educación de un hijo "... no puede cesar ipso facto meramente por el hecho de que el hijo ha alcanzado su mayoría de edad." Key Nieves v. Oyola Nieves, 116 D.P.R. 261, 265 (1985).
10. En lo pertinente, este Artículo dispone que: ’fijos pagos por concepto de pensiones alimentarias y de aumentos en las mismas serán efectivos desde la fecha en que se radicó la petición de alimentos o se emitió la orden por el Administrador." 8 L.P.R.A. § 518.
11. Ley Núm. 131 de 17 de diciembre de 1993, Art. 1.
12. El demandado no ha demostrado que su moción de nuevo juicio pueda estar predicada en alguno de los primeros dos incisos de la Regla 48.1 de las de Procedimiento Civil. Estos incisos permiten la solicitud cuando (a) se descubriere evidencia esencial la cual a pesar de una diligencia razonable no pudo descubrirse ni presentarse en el juicio, o (b) cuando no fuere posible preparar una exposición en forma narrativa de la evidencia o no fuere posible obtener una transcripción de las notas taquigráficas de los procedimientos, debido a la muerte o incapacidad del taquígrafo, o la ausencia o pérdida de la cinta magnetofónica correspondiente. 32 L.P.R.A. Ap. m,R 48.1(a) y (b).
*1046 13. La Regla 44.1 de las de Procedimiento Civil dispone en su inciso (a) que "[l]as costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal en su discreción estima que un litigante debe reembolsar a otro." 32 L.P.R.A. Ap. III R. 44.1(a) (énfasis suplido).